JEFFREY LAMONT LEE,

          **Plaintiff,**

  **v.**                                     **Case No. 24-CV-287**

**CANDICE ANDRYCHOWICZ, et al.,**

          **Defendants.**

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Jeffrey Lamont Lee, who was previously incarcerated and is representing himself, brings this lawsuit under 42 U.S.C. § 1983. Lee was allowed to proceed on a claim against Candice Andrychowicz, Michelle Burton, John Schwieso, and Jennfier Krogh pursuant to the Eighth Amendment for alleged deliberate indifference to Lee's conditions of confinement. He was also allowed to proceed against Burton pursuant to the Eighth Amendment for alleged deliberate indifference to Lee's serious medical needs. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (Docket # 43.) The parties have consented to the jurisdiction of a magistrate judge. (Docket # 6, Docket # 13.) For the reasons stated below, the defendants' motion for summary judgment is granted and the case is dismissed.

## FACTS

At all times relevant, Lee was housed at the Kettle Moraine Correctional Institution ("KMCI"). (Docket # 45, ¶ 1.) Burton was an Advanced Practice Nurse-Prescriber ("APNP")

at KMCI and was the Health Services Manager. (*Id.*, ¶ 2.) Krogh was a Lieutenant; Andrychowicz was a corrections officer; and Schwieso was a Sergeant at KMCI. (*Id.*, ¶¶ 3-5.)

Lee suffers from ulcerative colitis, proctocolitis, urinary hesitancy, and frequent urination. (*Id.* ¶¶ 6–14.) These conditions cause intestinal issues such as diarrhea, the need to pass stool/fecal incontinence, and urinary incontinence. (*Id.* ¶¶ 7, 9, 14.) As a result, on June 16, 2022, Health Services staff entered a "special handling note" into the Wisconsin Integrated Computer System ("WICS"), which is an electronic platform that houses prisoner records including medical restrictions. (*Id.*, ¶¶ 15–17.) The special handling note stated, "Due to medical condition, patient may need to use the restroom more frequently." (*Id.*, ¶ 21.) On June 22, 2022, the special handling note was updated to state, "Due to medical condition, patient may need to use the restroom more frequently, security can decide if this includes times when restroom is closed for cleaning or count." (*Id.*, ¶ 22.) This note communicated Lee's issue to all security staff. (*Id.*, ¶ 18.) Lee refers to this note as a "bathroom pass," though KMCI does not issue "bathroom passes." (*Id.*, ¶¶ 15, 27.) Lee also construed this note as giving him extra bathroom time as needed, and that security had to use "common sense" when using their discretion to allow him to use the bathroom. (Docket # 51, ¶¶ 15, 27.)

The defendants assert that Lee would use the pass at inappropriate times, such as when security staff were conducting "count." (Docket # 45, ¶ 54.) "Counts are conducted by security staff to ensure all inmates are present and accounted for"; there are two types of counts: standing counts and non-standing counts. (*Id.*, ¶¶ 29, 32, 36.) Standing counts take place four times a day at 7:25 a.m., 12:15 p.m., 4:40 p.m., and 9:15 p.m. (*Id.*, ¶ 38.) Non-standing counts occur twice a day, during early morning hours, 12:00 a.m. and 4:00 a.m. (*Id.*) Standing counts last between 15 and 20 minutes, and prisoners are not allowed to move about

2

the housing unit during standing counts. (*Id.*, ¶¶ 32, 33.) Prisoners "must stand at their bunks facing the cell window with their room lights on, electronics off, and headphones removed." (*Id.*, ¶ 34.) Non-standing counts take approximately five minutes, and they "are informal counts conducted by staff to verify that all inmates are present." (*Id.*, ¶¶ 36–37.) Prisoners cannot move until the count has cleared, meaning all the inmates are accurately counted, because movement "disrupts staff from accurately counting inmates." (*Id.*, ¶ 43.) If a count is inaccurate, or if a prisoner cannot be located during count, all the other prisoners in the housing unit must wait in their cells until the discrepancy is resolved. (*Id.*, ¶ 47.)

On June 23, 2023, Andrychowicz was waiting for the 4:40 p.m. count to clear when Lee left his cell to use the bathroom. (*Id.*, ¶ 49.) Andrychowicz told Lee that count was not clear and told him to return to his cell. (*Id.*, ¶ 50.) Lee responded, "I have to go to the bathroom." (*Id.*, ¶ 50.) Andrychowicz told him that if he did not return to the cell, he would get a conduct report because count was not clear. (*Id.*, ¶ 52.) Lee responded, "Then you're going to have to write the ticket." (*Id.*) He then went to the bathroom, and Andrychowicz issued the conduct report. (Docket # 47-2 at 3.) In the conduct report, she noted the special handling statement but also noted that Lee's actions disrupted count for the unit. Inmate Lee has multiple prior warnings for the same offense." (*Id.*) The hearing officer found Lee guilty and gave him a disposition of "reprimand." (*Id.*)

Lee appealed the conduct report the next day, June 24, 2023, stating that he had to use the bathroom because he has "a very serious medical condition that <u>could have made my area unsanitary if I boo-booed on myself. That would have been embarrassing!</u>" (*Id.* at 1.) (emphasis in original). He also stated that writing him "<u>a ticket for an uncontrollable medical condition is not fair!</u>" (*Id.*) (emphasis in original). The Warden reversed the decision. (*Id.*)

Also on June 24, 2023, Lee went to the Health Services Unit ("HSU") for a routine medical check and mentioned what occurred on June 23. (Docket # 50 at 2.) As a result, on June 26, 2023, HSU staff "sent a memo to the [housing] unit reminding them of Lee's diagnosed medical condition and its affects of not handling properly requesting that they use common sense about extra bathroom needs." (*Id.*)

On June 28, 2023, Lee received a memo from APNP Tracy Plaskey, which stated, "I need to remind you that you *[sic]* that this is not a new diagnosis for you. You know the security policy and procedure which are noted in the handbook and you are to be cognoscente *[sic]* of those security requirements. You should be using the bathroom when it is available to you. You should not be waiting and then asking to use the bathroom when it is closed or during count. . . . Ultimately you may be required to wait to use the bathroom per security policy and procedure." (Docket # 50-2 at 5.) Lee suspects that this memo was sent at the request of Andrychowicz because they contained "the same words that Ms. A always said to Lee." (Docket # 50 at 2.) He also contends that the information contained in the memo was false. (*Id.*)

On July 1, 2023, Lee wrote the security director asking for the "security discretion" piece of his special handling note to be removed. (*Id.* at 2.) On July 5, 2023, Lee filed an inmate complaint about the "security discretion" piece remaining in his special handling note. (*Id.* at 3.) However, the inmate complaint was rejected because Lee did not follow the "proper chain-of-command." (*Id.*)

On August 25, 2023, an unknown unit officer told Nurse Kimberlee Portschy "that Lee was only using the bathroom during count or when the bathroom was closed." (Docket # 45, ¶ 61.) As a result, Burton told Portschy to remove Lee's special handling note. (*Id.*,

¶ 62.) In the WICS system, the special handling note showed an end date of August 25, 2023. (*Id.*, ¶ 63.) That same day, HSU sent Lee a letter that stated, "It was brought to HSU attention that you have been misusing your bathroom pass. We no longer give bathroom passes through HSU. At this time your bathroom pass has been discontinued. We wanted to inform you of this, so you can plan accordingly for count and when the bathrooms are closed." (Docket # 46-1 at 42.)[1]

Lee states that on August 25, 2023, when he was heading to the bathroom, Andrychowicz said to Schwieso, "Lee thinks he can do what he want to." (Docket # 50 at 3.) He points out that shortly thereafter, he received the memo from HSU. (*Id.*) Lee then asked Andrychowicz why she falsely told HSU he was using the bathroom at inappropriate times, and according to Lee, Andrychowicz responded that she did not call HSU but Schwieso did. (*Id.*) As a result, Lee filed an inmate complaint against Schwieso. (*Id.*)

On August 27, 2023, Lee wrote a letter to the security director that stated, "at approximately 6:11 p.m.-6:15 p.m. I . . . boo-bood on myself because it felt like a fart but it was a boo-boo when I farted causing me to have to go to the bathroom when the bathroom was closed." (Docket # 50-2 at 15.) He also took issue with losing his "bathroom pass" and asked for it to be reinstated. (*Id.* at 15–16.) He further noted that he believed Andrychowicz and Schwieso conspired against him to get his pass taken away. (*Id.*)

On August 28, 2023, he wrote an "Interview/Information Request" to HSU stating that he never abused his "bathroom pass" privileges, explaining that he has emergency bathroom situations, and asking that his pass be reinstated. (*Id.* at 17.) Burton responded on

---

[1] There is some confusion in the record how KMCI used the term "bathroom pass"; however, the court construes "bathroom pass" to mean Lee's special handling note.

August 31, 2023, "Previously addressed. HSU doesn't give bathroom passes." (*Id.*) That same day, Lee states he filled out a Health Services Request asking for a medical bracelet that would indicate his medical conditions. (*Id.* at 18.) A nurse responded that he would be seen by nursing. (*Id.*) On September 1, 2023, Burton responded to his request, stating it "has been denied for Ulcerative Colitis. The purpose of the medical alert bracelet is to provide first responders with important information regarding your health." (*Id.* at 19.)

On September 16, 2023, Lee met with Captain Wilteius, who told him "officers are going to work with him and that if Lee continues to go to the bathroom to [*sic*] often during count or when the bathroom is closed that he would be held accountable for violating institution policies and procedures." (Docket # 50 at 4.)

On October 10, 2023, at 4:00 a.m. during the non-standing count, Lee got up to go to the bathroom. (Docket # 45, ¶ 72.) Officer Reichard told Lee, "It's count time" and Lee responded, "But I gotta piss man." (*Id.*, ¶¶ 72–73.) Krogh was conducting count, and as she was finishing, she saw Lee exit the bathroom. (*Id.*, ¶ 75.). Krogh told Lee he would receive a conduct report for using the bathroom during count. (*Id.*, ¶ 76.) Lee told Krogh he had a medical restriction that allowed him to be in the bathroom during count. (*Id.*, ¶ 77.) Krogh reviewed Lee's records in WICS and saw that his bathroom restriction was discontinued on August 25, 2023, and that Lee had received warnings for being in the bathroom during count on August 23, 24, and September 29, 2023. (*Id.*, ¶¶ 78–79.) Krogh then issued the conduct report. (*Id.*, ¶ 80.) Krogh notes that Lee did not ask to use the bathroom, nor did he tell anyone he was experiencing an emergency.

The defendants note that Lee had options other than the special handling note that could have assisted him with this issue, including requesting ADA accommodations, adult

6

diapers, or extra bedding. (*Id.*, ¶¶ 86–89, 102.) They also note that Lee engaged in behaviors that would exacerbate his digestive issues such as purchasing spicy foods and drinking coffee. (*Id.*, ¶ 101.) The defendants further state that Lee's medical records show no incidents of Lee soiling himself "due to fecal incontinence caused by urgency"; the only issue was the accident caused by flatulence on August 27, 2023. (*Id.*, ¶¶ 96–97.) Lee asserts that he "defecated on himself several times in the company of his roommates during the times the bathroom was closed" but he does not provide any details regarding when these incidents happened and which defendants were involved. (Docket # 50 at 9.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*,

7

583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Lee claims that the defendants violated his Eighth Amendment rights by allowing him to live in unconstitutional conditions of confinement. He also claims that Burton violated his Eighth Amendment rights when she was deliberately indifferent to his serious medical needs.

   1.   *Conditions of Confinement Claim Against All Defendants*

"The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measure of life's necessities' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Whether conditions of confinement are cruel and unusual must be judged in accordance with contemporary standards of decency." *Id.*

"Adequate . . . facilities to wash and use the toilet are among the 'minimal civilized measure of life's necessities.'" *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). However, "temporary lack of toilet access is not cruel and unusual punishment." *Harris v. Jones*, Case No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) (citing *Dellis v. Corr.*

8

*Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)). Taking the facts in a light most favorable to Lee, he was not deprived of access to the toilet. In the incidents described by the parties, Lee went to the bathroom each time but was later punished for it—either with a conduct report or loss of his "special handling note." Thus, no deprivation occurred. Lee argues that he did soil himself during one incident; however, that was an accident caused by assumed flatulence, not as a result of the defendants refusing to allow him to use the bathroom. Fundamentally, Lee contests the loss of his "special handling note," not denial of bathroom access. At most, this would be a due process claim under the Fourteenth Amendment. Even then, however, he does not allege a sufficient deprivation to state a claim. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) ("Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") Because Lee does not establish that he suffered an extreme deprivation, summary judgment is granted in favor of the defendants. Because there are no additional claims against any of the defendants except Burton, they are dismissed.[2]

   2. *Deliberate Indifference to Medical Needs Claim Against Burton*

A plaintiff must demonstrate four elements to establish a deliberate indifference to medical needs claim under the Eighth Amendment. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). First, "there must be a risk of harm to the plaintiff that is so objectively serious as to be 'excessive' (and that risk must in fact materialize)." *Id.* Second, "the defendant must 'know' of the risk (put differently, he must possess subjective awareness that the risk exists)."

---

[2] The defendants argued that Schwieso was not personally involved in the conditions of confinement claim and should be dismissed on that basis. However, because I find that Lee does not establish a conditions of confinement claim, I need not address this argument.

*Id.* Third, "the defendant's response to the risk must be so inadequate as to constitute 'disregard' of (or deliberate indifference toward) the risk." *Id.* Finally, "the plaintiff must prove that the defendant's deliberate indifference actually *caused* his injury." *Id.* (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (emphasis in original)).

The parties dispute whether Lee suffered from an objectively serious medical need and whether Burton was deliberately indifferent. I need not address those issues, however, because no reasonable factfinder could conclude that Burton caused Lee to suffer an injury. *See Gabb v. Wexford Health*, 945 F.3d 1027, 1033 (7th Cir. 2019) (holding that the court did not need to decide whether defendants were deliberately indifference because the plaintiff did not show an injury as a result of their actions.) For a § 1983 claim to survive summary judgment, a plaintiff "must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (quoting *Elyea*, 631 F.3d at 864) (emphasis in original).

As discussed above, Lee did not suffer an injury as a result of being denied access to a bathroom or losing his special handling note. Though Lee asserts that he "defecated on himself several times in the company of his roommates during the times the bathroom was closed," he does not provide any details regarding when these incidents happened and which defendants were involved. (Docket # 50 at 9.) Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998). In short, Lee fails to establish that as a result of Burton discontinuing his special handling note, he suffered from any actual injury. At most, Lee had concerns about the possibility of soiling himself or being written up, but the possibility of injury is insufficient. Summary judgment is granted in favor of Burton.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argue that they are entitled to qualified immunity. Because I find in the defendants' favor on the merits of Lee's claims, I need not address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 43) is **GRANTED.**

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry

11

of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 29th day of May, 2026.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

12